IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**UNITED STATES OF AMERICA**

**v.**                              CRIMINAL ACTION NO. 2:07-00143-03

**SERGIO ALARCON-CARBALLAR**

## MEMORANDUM OPINION AND ORDER

On December 20, 2007, the defendant appeared in person and by counsel, Matthew Victor, and the government appeared by Assistant United States Attorney Erik Goes.  Ezequill Ortiz served as interpreter for defendant, who is Spanish-speaking.  The subject of the hearing was defendant's pending pretrial motions.  (Doc. Nos. 41, 61, 71.)

At the commencement of the hearing, the parties informed the court of the status of the discovery issues addressed in defendant's pretrial motions.  Because it appeared that the parties had resolved the discovery concerns raised by defendant, the court found defendant's discovery motions (Doc. Nos. 41, 61) to be moot.  The court next heard testimony and argument with regard to defendant's motion to suppress (Doc. No. 71), but reserved ruling on the motion.  For the reasons set forth below, the court now denies the motion to suppress.

## I. **Background**

Defendant is one of three individuals charged in a two-count indictment returned on August 1, 2007.[*] (Doc. No. 30.) Count One charges the three with engaging in a conspiracy from December 4, 2006, to July 5, 2007, the object of which was to distribute fifty kilograms or more of marijuana, in violation of Title 21 United States Code Section 846. (Id. at 1.) Count Two charges that, on or about July 5, 2007, the three defendants possessed with the intent to distribute fifty kilograms or more of marijuana, in violation of Title 21 United States Code Section 841(a)(1). (Id. at 2.)

At the December 20 hearing, Robert W. Negro of the Drug Enforcement Administration ("DEA") gave the following case history in his testimony to the court. The DEA inquiry in this case began with a confidential informant ("CI") investigation of co-defendant Wilman A. Welchez-Ortiz. Most of the conversations recorded in the course of this investigation were in regard to Welchez-Ortiz and co-defendant Osman Amaya. On July 4, 2007, the CI made a recorded call to Welchez-Ortiz to confirm the delivery of two hundred pounds of marijuana the following day. The CI, with Agent Negro listening, was told that another individual

---

[*] The co-defendants in this matter, Wilman A. Welchez-Ortiz and Osman Amaya, have indicated a desire to enter guilty pleas, and do not join in defendant Alarcon-Carballar's motion to suppress. (See Doc. Nos. 69, 72.)

-2-

would accompany Welchez-Ortiz to deliver the marijuana, and that they would be traveling in at least two cars.

On July 5, 2007, four more recorded telephone calls were made between the CI and Welchez-Ortiz and observed by Agent Negro.  During the calls, the CI confirmed that Welchez-Ortiz was en route to Charleston, West Virginia, with the narcotics, and gave him directions to the motel where the exchange was to be made.  Agent Negro instructed the CI, who was to be wired during the exchange, to give a signal after he had seen the marijuana in person.  Rather than allowing the sale to be consummated, the DEA agents would then move in to arrest the suspects.

At approximately 1:50 p.m. on July 5, 2007, three vehicles with Ohio license plates entered the parking lot of the motel.  The vehicles, which were traveling in quick succession, were being driven by the three co-defendants, Welchez-Ortiz, Amaya, and Alarcon-Carballar.  The CI then met with Welchez-Ortiz and Amaya.  After examining the marijuana being transported in the trunk of one of their cars, the CI gave the verbal signal to the observing agents that he had confirmed the existence of the narcotics.  He then asked Welchez-Ortiz and Amaya about the marijuana being transported in the minivan driven by defendant Alarcon-Carballar, and was told that it was the same as the marijuana he had just examined.

The CI then excused himself on the pretense of getting a room key, and met with the observing officers. He informed them that all three vehicles were involved in the transaction. Approximately fifteen officers then proceeded to arrest the defendants. The trunk of one of the vehicles was open when the officers approached it. Inside the trunk they found several open cardboard boxes labeled "cookies," in which they could see bales of marijuana. In the minivan that had been driven by defendant Alarcon-Carballar, they discovered more than one hundred pounds of marijuana packaged in the same type of cardboard boxes, although these boxes were closed when the agents discovered them.

Upon their arrest at approximately 2:30 p.m., the defendants were taken to the DEA's Charleston office. While they were being processed, the defendants were interviewed individually. Defendant Alarcon-Carballar had informed Agent Negro that he did not speak English, so Negro obtained the assistance of Special Agent Jeffrey Rolf Wallenstrom. Although not fluent in Spanish, Wallenstrom had received five and a half months of intensive Spanish instruction through the DEA, and had been stationed for three years in Bolivia. Wallenstrom informed Alarcon-Carballar of his rights verbally and in writing using a rights form printed in Spanish. (Doc. No. 81 Ex. 1.) Defendant waived these rights and consented to the questioning, during which Wallenstrom served as interpreter.

Defendant's statement was taken at approximately 6:00 or 6:30 p.m. on July 5th. He was not handcuffed or restrained during the questioning. Defendant was held at the South Central Regional Jail that night, and was taken to appear before Magistrate Judge Mary E. Stanley the following morning. No further questioning of the defendant was conducted following the statement given around 6:30 p.m.

## II. Analysis

Defendant moves to suppress the evidence seized from the three vehicles on the grounds that the officers' search of the vehicles violated defendant Alarcon-Carballar's Fourth Amendment rights against unlawful search and seizure. (Doc. No. 71.) He further moves to suppress his statement to law enforcement on the basis that it was derived from an unlawful search of the vehicles, that it was taken in violation of his Fifth Amendment right against self-incrimination, and that it was taken in violation of the "Prompt Presentment Rule." (Id.) The court addresses each argument in turn.

### A. Validity of the Search

"It is well-settled under Fourth Amendment jurisprudence that a police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause to believe that the individual has committed, is committing, or is about to commit a crime." United States v. Dickey-Bey, 393

F.3d 449, 453 (4th Cir. 2004).  Under this analysis, the court should give appropriate deference to the expertise and experience of the law enforcement agents at the scene.  Id.  Considering the totality of the circumstances, the court must determine whether the information the agents had on the scene would be "'sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown,'" that the defendant had committed, was committing, or was about to commit a crime.  Id. (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).  If so, then the arrest and the search conducted incident to it were permissible.  See Illinois v. Gates, 462 U.S. 213, 230-31 (1983).

   In the case at hand, Agent Negro knew from personal observation of the calls between the CI and Welchez-Ortiz that two or more vehicles would arrive in the motel parking lot, having transported large quantities of marijuana from Ohio.  At the designated time and place, three vehicles with Ohio license plates entered the parking lot together.  The CI, who had a prior conviction relating to marijuana, met with two of the three drivers and confirmed for the covertly watching officers that the substance being offered was, in fact, marijuana.  He also confirmed that additional quantities of marijuana were being transported in the minivan driven by Alarcon-Carballar.

   Negro and his fellow agents then moved in and saw marijuana in open cardboard boxes labeled "cookies" in the ajar trunk of

-6-

one of the vehicles.  Through the window of the minivan driven by Alarcon-Carballar, additional closed boxes of the same type were visible.  Under these circumstances, Agent Negro and his fellow officers had ample justification for the arrest and ensuing search.

**B.   Right Against Self-Incrimination**

When a subject in custody is interrogated by law enforcement, the statements he makes will not be admissible against him unless he was first informed of his Fifth Amendment right against self-incrimination pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  These <u>Miranda</u> rights, which are intended to safeguard against statements produced by coercion at the hands of law enforcement, may be waived by a suspect if the waiver is made knowingly and voluntarily.  <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979).  A <u>Miranda</u> waiver may be either express or implied, but in either case the court must determine from the totality of the circumstances whether it was knowingly and voluntarily made.  <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986).  "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived."  <u>Id.</u>

For purposes of the court's Fifth Amendment analysis, it appears to be undisputed that defendant was in custody at the

time he gave his statement to Negro and Wallenstrom.  Agent Negro testified that, after the three suspects were arrested at around 2:30 p.m., they were transported to the DEA's Charleston office for processing.  During the processing, the officers questioned the three individually, Alarcon-Carballar's interrogation occurring last.  In the room at the time were Agents Negro and Wallenstrom, as well as a third agent.  Because the agents were aware that defendant did not speak English, Wallenstrom read him his Miranda rights using a bilingual card designed for that purpose.  (Doc. No. 81 Ex. 1.)  He was also allowed to look at the card, although the agents were not certain whether he actually read it.

   Both Negro and Wallenstrom testified that the defendant appeared lucid and engaged during the questioning, and that he freely waived the rights that had been read to him.  Although Wallenstrom described his own Spanish abilities as "conversational at best," he also testified that he took his time and took great care both in administering the Miranda rights and in translating the exchange between defendant and Agent Negro.  It was not a lengthy exchange; the statement was taken sometime between 6:00 and 6:30 p.m.  Considering all of the circumstances of the interrogation, the court is persuaded that the defendant's waiver of his Fifth Amendment rights was made knowingly and voluntarily.  See United States v. Martinez, 190 Fed. Appx. 321

(4th Cir. 2006)(affirming district court's denial of suppression motion under similar facts).

**C.   Prompt Presentment**

Pursuant to Federal Rule of Criminal Procedure 5(a), a defendant must be taken before a magistrate judge "without unnecessary delay" following his arrest.  Fed. R. Crim. P. 5(a).  Further instruction is found in Title 18 United States Code Section 3501(c):

> In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person . . . while such person was under arrest or other detention . . . shall not be inadmissible solely because of delay in bringing such person before a magistrate . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: Provided, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

18 U.S.C. § 3501(c).

The statement in question was taken approximately four to four and a half hours after defendant's arrest, and the evidence before the court indicates that no additional questioning of defendant was conducted before his court appearance the following morning.  Although the court cannot conclude that the entire twenty-one hour delay that followed defendant's arrest was

reasonable and necessary, such a conclusion is not required; "[t]he Fourth Circuit has held that a confession is admissible even if there had been undue delay so long as the statement was voluntarily given prior to such delay." United States v. Kroshneva, No. 2:07cr137, 2007 U.S. Dist. LEXIS 66632, at *8 (E. D. Va. Sept. 10, 2007)(citing United States v. Seohnlein, 423 F.2d 1051, 1053 (4th Cir. 1970)).  Because the court concludes that Alarcon-Carballar's statement was in all respects voluntarily made, and made within six hours of his arrest, the statement will be admissible at trial.

### III.  Conclusion

For the reasons placed on the record at the court's December 20, 2007, hearing, the court finds defendant's discovery motions (Doc. Nos. 41, 61) to be **MOOT**.  For the reasons set forth above, defendant's motion to suppress (Doc. No. 71) is hereby **DENIED**.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record and to the Probation Office of this court.

It is **SO ORDERED** this 4th day of January, 2008.

ENTER:

David A. Faber
United States District Judge